It's a pleasure to be here, and we'll proceed with the first case on the oral argument calendar, which is United States v. Costa. Counsel? Thank you. My name is Robert Rainwater. I represent the appellant, Justin Costa. I'd like to start off by discussing the issues raised in the motion to suppress that was filed in the district court. In this particular case, there was a series of three search warrant applications, including affidavits, over a short period of time. The first was for an application to obtain PG records for a suspected residence. The second one was then to an application for a thermal imaging scan of that residence. And finally, the third one was to actually search the residence. Prior to the motion to suppress, the defense raised the issue that, under Franks, there were false and misleading or recklessly misleading allegations in the affidavits. That was based upon exhibits that we attached to our motion to suppress, the difference in statements in the three different affidavits, and a declaration that had been submitted to the court by the officer who prepared the three different affidavits. The court granted a Franks hearing after comparing those, that information based upon our representations that there were false statements. We focused on five different areas where we believe there were false statements in the affidavits. The first one was the statement in all three affidavits that a criminal history showed a prior arrest and conviction for cultivation and possession of marijuana. And when, in fact, the officer testified at the hearing that he had a criminal history for the defendant that we had submitted, I believe it's Defendant's Exhibit H in the record, which indicated that there was a notation on his prior record that an arrest had been made and that there had been a drug court referral, deferred judgment, and a successful term. That's all the information that was in there. The officer testified that he's had experience reading these criminal histories. He knows that usually if there's conviction, it says conviction to a particular count, and then there's a sentence there. And in this case, he knew there was not that information. And therefore, his reference in all three warrants to the fact that there was a criminal history showing arrest and conviction for both counts was false, according to the officer's own testimony. The district court, in fact, found that was a false statement, but went on to hold that, apparently, the district court found that it wasn't false in the sense that it was intended to mislead the magistrate. But I think that's an incorrect understanding of the falsity necessary under Frank's. Basically, it only requires that a fiant knowingly or recklessly misleads the judge with false information. I've cited a case on the brief where it says where a fiant states, I had the information different than what I put in the warrant. That's a false statement. And if it misleads the judge, then it's a Frank's violation. It should be excluded from the warrant. So I think that first area, the criminal history representation, should be excluded from all three warrants. The second area we focused on was that in the second warrant, after they got the PG&E bills, the officer stated that he checked several PG&E bills of individuals with homes of comparable size and learned that there was a certain kilowatt usage more than what was in there. When, in fact ---- Well, wait a minute. Now, it's not just more. It was substantially more, right? Correct. It's practically an industrial-level usage in a residential area. Or it could be considered as a different usage because it's more than what normally required for a marijuana grower. There are several different inferences. I don't think the inference that by itself, and there's case law that says an inference of high usage by itself. It's not marijuana, but it smells heavy usage, and some kind of industry or business is being conducted over and above normal living consumption of electric power. Yes, I would agree with that. But in this case, we don't have an indication that it's anything that was illegal. There's nothing to establish that this usage was different than other residents in the area. It does establish that this residence is unique among other residences in the area. Well, I don't think we have any evidence that they checked other evidence. That's the point of the argument. He didn't actually check other residents in the area. What his testimony was was he asked people he knew who he believed had similar houses what their bills were, and he never actually checked any actual bills to see what their usage was. He never checked any. We don't have any indication whether these were in the same area or not. This is a rural area where it occurred. It was wintertime. We don't have any evidence about whether or not they checked their usage for an average over the whole year, their usage during the summer, their usage during the wintertime. There could be obviously variations. So your argument is essentially this is normal customer usage in this neighborhood, right? No. Well, my argument is that he lied to the magistrate, and there's not enough information to make a determination that that information leads to criminality here. And, in fact, he indicated that in the affidavit that he filed with the court and in his testimony that he never actually checked any bills. And in the third warrant, he makes a completely different statement. He admits that because in the third warrant he says the amount of kilowatt usage in a residence, and I put under line A, meaning a single residence, did not have an indoor grow with significantly less. So, you know, I think it's disingenuous by the government to argue that when he says, I checked several bills, it doesn't really mean that. That's a false statement. The district court magistrate made a factual rule, and that was a false statement. Again, I think the district court misunderstood that there's some additional requirement that the defense show that he did it on purpose to mislead the magistrate or some ill intent. But I think the law is if he doesn't do it by accident. In other words, if he had other information of which he put in there or he did it by accident or had information he didn't know, that's not knowing or reckless. If you had to summarize, what would you think the reason for those rulings are, that there's no basis for issuing a warrant unless there's a lie? I'm sorry. Maybe I don't understand the question. I guess you're arguing that he got his search warrant based on false information. Correct. So if we say, all right, you're right. All because, so to speak. We say, all right, you're right. Then do we say, so the search warrant must be quashed because there's not sufficient basis if you rule out the false information. No, no. Issuing the warrant. I'm not saying that necessarily. I'm saying. I would hope you're not, because it seems to me that's what we boil down to. No, I'm saying. Don't we have to look at that and see, is there enough? Even if we rule out the false statement, is there enough? Even if we include the false statement, I think there's not enough. And, in fact, the district court found there's not enough. But the relevance of the false statement is we have to first exclude them and then reanalyze the warrant. And also it deals with whether there's a good faith exception to the warrant requirement. If there's a false statement, then we don't have a lien issue. And then there's no good faith compliance. So it's relevant on those two reasons. And all I'm arguing is we should exclude those statements when we consider the warrant. And then we consider whether there's probable cause. And then it goes to the lien issue about whether or not there was a good faith compliance with the warrant, whether or not they made reckless or false statements. I don't know if that answers the question, but that's the best I can do. The next area we focused on was the fact that in the first two warrants, this client said, and I quote, an anonymous citizen informant, and then put in parentheses CI, had notified him of a possible indoor marijuana grow at the address and that Mr. Costa resided at that address, when, in fact, he testified that the information he had was from a fellow officer who got a call from someone who was unidentified in any way, who said, this person told me there's a possible marijuana grow at a certain residence and Mr. Costa lives there. And, in fact, in the final third warrant, he put down correctly the information by saying he received a tip regarding that address and the defendant resided at the address and that the person, he or she, believed that there was growing marijuana at the residence. And I would point out that the officer testified that he knows the difference between, number one, an anonymous citizen informant, which implies someone who has no ax to grind in the case, who doesn't have a prior criminal record, and he also testified about putting in the term CI, which is commonly referred to as a confidential informant, which has even more credibility. So I don't think there's any doubt that in warrants one and two, the affiant exaggerated his probable cause. And, in fact, it's pretty consistent through the warrants. As he gets more information, he gets a PG&E, he gets a thermal imaging, he thinks he has more probable cause, he corrects the statements that he made that were false in the beginning warrants. For example, he doesn't need the anonymous citizen informant anymore or CI statement. He goes to the third warrant to what it actually is, a tip from anonymous tip. So I think it pretty clearly shows that during the course of these warrants, he began to feel more confident about his probable cause and became more truthful. And as he needed to be untruthful, he was untruthful to the magistrate in several areas. The next area that we focused on was his statement that he was unable to locate a driver's license history for Mr. Conda at the marijuana agro address. In the first and second warrants, he put that information in there when he testified that, in fact, he knew that the driver's license information was that Mr. Costa had a residence at a different location. And, in fact, in the third warrant, again, when he thought he had more probable cause, he put down that he had located a driver's license history with an address different than the one where the marijuana was supposedly grown, which was information which is the only information that went directly to the informant's tips information that Mr. Costa resided at that residence. Now, I'm not arguing it's conclusive evidence, but it's evidence the magistrate should have considered in deciding whether to issue the warrant, whether or not there was information that he lived there or whether or not they were unable to find information that he lived there or whether they had information that he lived someplace else. And, in fact, the district court found that that was an admission that was false or misleading, but then found it was not material. And I think the magistrate or the district court misunderstood the meaning of material. It seems to me his definition of material was that if that had been left out, then the magistrate or the issuing judge found probable cause, but that's not materiality. I think materiality in this context is whether or not it goes to a decision about probable cause. It's not an issue of whether or not the magistrate who read the affidavit wouldn't have found probable cause because of that change, but did he consider it? That makes it material. And if it's false, then it has to be excluded from the equation when we review it on it. The findings of the district court, findings of fact, right? Yes. The district court made a finding of fact that was an admission, but it found it was not material. But the materiality is not a finding of fact. Excuse me, counsel. Yes. The finding of fact made by the district court may have been erroneous, but have you made any showing that the officer relied on the finding of the district court in executing the warrant? I'm not quite sure what you meant. I haven't gotten to the Leon issue yet, if that's what the court is addressing in terms of the issue of whether or not the officer had a good faith belief in the validity of the warrant in terms of whether or not that was a good faith. Well, this is the place where we're starting to get a mix of your position and the findings of fact made by the district court. That's my problem. You're just saying the district court had the right to make findings of fact. Correct. And you concede the findings of fact made by the district court are correct, or you don't. Okay. And I concede that the district court found that the criminal history was false, a finding of fact, that he checks several PG&E bills was false, and I agree that the driver's license history was an admission that was false. The district court made all those findings. The district court found that the admission was not material, which is a different finding, and which is reviewed de novo because it is a mixed question of law and fact, and this court must then determine the law and the finding to determine whether or not it was material. And I think this court can review it de novo and should review it de novo under this court's previous decision in U.S. v. DeLong. So I'm not challenging in those cases the district court's finding. I think the district court was clearly erroneous in the area of the citizen informant and in the area that I haven't got to yet, which deals with the comparison to other groves, and that's the next issue I want to talk about, because in the second warrant, a client put down that he had talked with one detective in Los Banos who indicated the usage amount in the marijuana he had grown recently was 3,500 kilowatts. And in the third warrant, he changed that to say he knew of other indoor marijuana groves locations which showed usage higher than the known marijuana groves. In other words, he increased it to multiple marijuana groves. And he testified that the reason he only put about the one in the second warrant is because he only had exact information from one person. And in the third warrant, he said he talked to people in general but didn't have specific kilowatt usage. He put down he increased it, even though he didn't have that information, to put down multiple locations, which I think increased the probable cause and was a false statement. Those are the five areas which I think show that there were false omissions and false statements in this affidavit, or all three of the affidavits. Let's assume for the moment that, leaving the question of materiality aside, that we agreed with the district court's factual findings, or at least didn't find them reversible under a clearly erroneous standard. Where does that leave you? Is that fatal to your case, or do you still think that you have enough that the warrants should be suppressed? Well, I think even without excluding any of the Franks' information, under the Leong case that I've cited, which is U.S. v. Leong, L-U-O-N-G, I'm not sure if I pronounced that correctly, which is basically on all fours, which indicated where you have an uncooperated anonymous tip as a linchpin of your probable cause, with no other information to support it, that that's not a good, you don't have any indicia of probable cause and you can't rely on it under good faith. And I would point out, particularly in terms of the third warrant, just quickly, because I realize my time is running up, that all we have for probable cause is an anonymous tip that someone believed that Mr. Costa was growing marijuana at that residence, contradicted by the driver's license information, with no other evidence to indicate that, for example, to substantiate that tip. For example, in other cases, we have information that says, I went in the residence, I've seen marijuana growing there. We don't even have that here. We have — Your head was high usage of electricity. Well, yes, with no explanation for it. No explanation. For example, in other cases — Case coupled with high usage. Yes. And in other cases where we have a stronger tip, we had somebody went in the house, or more information, in other cases we have high usage with comparison to similar houses in similar locations. Other explanations for the high usage — I think what Judge Ferris is asking is high usage plus an anonymous tip, if you assume that, is that enough? No. Not underlined. That was, I think, his question. All right. I would reserve the rest of my time for rebuttal. Good morning, Your Honors. I'm Karen Escobar. I represented the government in the district court, an emotionally charged case and a lot of issues, but I think the only issue before the court really that requires analysis, because there are multiple layers of analysis with respect to the constitutionality of the warrants. It's our position that the first warrant, which sought solely the records from PG&E, there is no constitutional issue. The defendant lacks standing because there is no reasonable expectation of privacy in the business records of a third party. The defendant has never conceded that the first search warrant was not something that he could challenge. The second warrants, however, should be the focus of the court's attention. The validity of the second search warrant, which sought purely thermal imaging authorization, and the third warrant, which sought the search of the residents, which was based on primarily many of the factors enunciated in the second search warrant, along with the findings of the thermal imaging, which found that there was a high heat source emanating from the residence where the defendant resided. As Your Honor, Judge Ferris wrote in Motts, where the defendant makes a substantial preliminary showing that a false statement was deliberately or recklessly included in the affidavit and was material to the magistrate's finding of probable cause, the court must hold a hearing to investigate the veracity of the affiant. It's the government's position that the defendant did not make a substantial preliminary showing to even warrant a Franks hearing in this case. Before the hearing was held, the only evidence that was submitted by the defendant was in the memorandum, his exhibits, primarily the declaration of the officer, the California Highway Patrol officer, who was assigned to this narcotics task force in Merced, with eight years of experience in narcotics investigations and participation in over 100 marijuana cultivation cases. And in that declaration, the officer stated that with respect to the issue of checking the PG&E bills of homes of comparable or indoor homes of comparable size that did not have indoor cultivation, that the bills were significantly lower, the kilowatt usage was significantly lower. In that declaration, he stated that he did not obtain the bills and read those bills. He talked to homeowners of homes of comparable size. That is the only evidence, along with the rap sheet of the defendant, that the defendant submitted in support of a Franks hearing. The defendant identified, as he has indicated, that one of the false statements that he identified was that in search warrants one and two, the officer referred to an anonymous citizen informant. Well, to get back to the PG&E bills, so when he said he checked several PG&E bills, that was wrong. He did not check the bills. And he clarified then at the Franks hearing and in his declaration, which was submitted in support of the request for the Franks hearing, that he had actually, the basis of that statement was that he obtained verbal information. He talked to homeowners of homes of comparable size. And the government would argue that that statement is subject to interpretation. The officer, his checking with, checking the PG&E bills is what he said in the warrant. By that, he meant he talked to people of homes of comparable size. I would submit that that was a semantic or perhaps an inarticulate or not well-crafted statement of what, in fact, he did. He did not deliberately misrepresent the court at any stage, the district court, that is, in what he meant. He did not, for example, submit a declaration that the defendant attached in support of his Franks request that, oh, yes, I did obtain actually physical documents, PG&E records, and look at PG&E records of homes of comparable size. He explained what he meant. He did not deliberately misrepresent to the district court what he meant. I would argue it was inarticulate. It was perhaps negligent how he stated what it is he did. In any event, I don't believe that it arises to deliberate misrepresentation, nor did the district court after the Franks hearing, after assessing the credibility of Officer Lopez, find that it was a deliberate misrepresentation. It was perhaps negligent, but it did not rise to deliberate misrepresentation. The other finding by the district court, which we believe, well, we disagree with actually, was the criminal history of the defendant. The court did find, as the defense states, that the officer misrepresented the criminal history of the defendant, stating that he had been convicted for cultivation of marijuana in the past. In the search warrants, that's what he stated. The rap sheets that were submitted in support of the Franks hearing indicated that the defendant was, in fact, arrested for cultivation of marijuana and that he participated in a drug program, a deferred entry of judgment was made, and the case was dismissed. The officer testified that in his mind he believed that the conviction was valid, and that issue has been clarified recently by this court, by Judge Beeser in Norbury in June of this year, indicating that those type of convictions, deferred entry of judgments or deferred judgments, after participation in a drug program, whether it's been a guilty plea, as there was in this case, do, in fact, constitute a conviction. The officer was not wrong when he characterized that as a conviction in the search warrants and at the Franks hearing. The court, the district court was, we believe, incorrect in finding that the statement was false. That is a legal interpretation. The officer is not a lawyer, of course, but it was not false, and he truthfully stated that he believed there was a conviction, as this court has indicated long after the sentencing of the defendant in this case in June of this year, such crimes where there is a guilty plea or a noble contendory plea, successful participation in a drug program, even though there's a dismissal, it is a conviction. So the officer was not wrong. The only falsity in this case was the statement of the officer that he had checked PG&E bills of people of homes of comparable size that did not have indoor marijuana grows. We would submit that that does not constitute a substantial showing necessary to trigger a Franks hearing. Now, the Franks, even though one was granted, the evidence adduced at the hearing did not really reveal anything more than what was already presented before. How would you state the narrow issue that's before us for decision, Ms. Escobar? How would you state the issue that is before the court for decision? Whether the ‑‑ if there were any false statements, and the government maintains there was only one relating to the checking, possibly only one, checking the PG&E bills, whether the false statements were deliberately misrepresentations or in reckless disregard of the truth, and whether those statements were material to probable cause finding, because if the statements were false, this court is allowed, of course, to excise those from the warrant to determine whether or not the remaining factors still establish probable cause, and we believe there was more than ample factors to support a probable cause determination in the second warrant for thermal imaging than a third warrant. There was more than just an anonymous tip in thermal imaging. There was, with respect to the probable cause determination in the second warrant, there was follow‑up surveillance by Officer Lopez, who went to the location in Winton, it was, a little rural community in Winton. He saw the two large exhaust fans on top of a metal cargo container attached to a wooden outbuilding behind the residence, and he indicated in his warrants that the wooden outbuilding was obscured from view from the street by a very, very tall fence. He said in the third warrant there was some sort of metal, sheet metal atop that tall fence obscuring the marijuana clones were found from view, and on top of the wooden building he observed the blue tarp, which further concealed the activities within. He also indicated in the warrants that the two large exhaust fans were consistent with having a sophisticated grow, indoor grow operation, which requires the output of large amount of energy necessitated by high‑powered indoor lights, the high‑intensity lights necessary for grow, etc. He articulated that in both of the warrants. He also set forth his training and experience, and as you also indicated, in MOTS, that is to be accorded a great deal of respect and deference. In the Supreme Court, the training and experience of the officers would be given a great deal of deference and accordance in the probable cause determination. So his training and experience could be properly considered. His statement that the power usage at the Mercedes residence was consistent with indoor cultivation of, quote, a large amount of marijuana plants should be accorded great deference. His observations viewed through his training and experience calculated in the probable cause determination. The average electrical usage for Mercedes residence, 5,520 kilowatts per month, was extremely high, and particularly in comparison to the other indoor grow at the same time, that was the detective Kirschman grow, which was 3,500 kilowatts per month. At the hearing, he testified with respect to this issue of location, singular versus locations, plural. Officer Lopez testified that the power usage was consistent with the indoor cultivation of, quote, a large amount of marijuana plants. Between the time he obtained the search warrant for the thermal imaging and the time he obtained the search warrant to actually search the residence, he talked to four other officers, and he named them in the Franks hearing. He named them by name, other narcotics officers, and compared what would be normal kilowatt usage for other indoor grows. And that was his testimony. So, you've got, that's not enough. Concealment by a fence is not enough. Blue tarps, not enough. So, what tips this over? The totality of the circumstances. Besides that, let's take it one at a time. So, you have, you know that tips not enough, energy usage isn't enough, fencing's not enough. Well, I think you can consider energy usage, even if you're excising out the statement regarding average daily electrical usage for comparable residences, checking PG&E bills of other comparable, even if you excise that out, you still have a criminal history indicating defendant Dustin Costa was involved in cultivation in the past of marijuana. You have kilowatt usage that is based on his training and experience, which he sets forth in the warrant being at least 100, participation 100. Right, but we know from Clark that anonymous tip plus high energy usage isn't enough. So, I'm trying to get down to the specifics of your argument. Are you saying criminal history, then, coupled with all that is enough? Criminal history, the steps taken to conceal the activities within the residence, the exhaust indicative of, you know, the two large exhaust indicative of indoor marijuana cultivation, the need to release the energy that's output by the high power lights, the electrical timers, all those types of things. The fact that even that it's in a rural environment, you know, out of Winton, California, a little farming community tucked away, which the state judge was well aware of the location, you know, of that particular area. Well, living in a rural area can't be an issue. No, of course not. Otherwise, my whole state's in trouble. No, but I think all the factors and It seems to me the only one you've come up with that's unique is the exhaust fan. No, the tall fence. In a community where really there are no fences out in the country, I think draws suspicion. What's your best case that says fencing is enough? This case has a unique set of factors. Does that mean there's no case? I don't mean to interrupt, but I gather you don't have a case that says fencing is important, true? There are cases that I may have cited to one, cases that say that steps taken to conceal may be considered. Do you have any cases on exhaust fans? Cases on equipment. Then the third warrant also adds, besides these factors we've been discussing, the results of the thermal imaging, which indicated a high heat source. So electrical usage, high heat source, training and experience, the observations viewed through the lens of training and experience, the rural community, criminal history. The anonymous tip as well is considered in the calculus. Even in the absence of probable cause, however, I think that the court, the district court rightly found that the good faith exception, applies, and we would ask that this court uphold the either under good faith or probable cause, the warrants. The as in freitas, which again, your honor wrote, law enforcements who reasonably act in reliance on search warrants should be entitled to rely on the good faith exception, and it applies here. The only relevant exceptions to the good faith exception, which we need to be concerned with, are whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and whether the judge in issuing the warrants was misled. And as we've argued, as the district court found, Officer Lopez did not mislead. Judge Hanson in search warrants two and three, there were no steps taken to deliberately misrepresent what he had done in the investigation and to support a probable cause determination. Whether the affidavit was so lacking in indicia of probable cause, well, the district court, Judge Ishii, indicated that this was a close case. And I believe that officers executing a warrant would not reasonably rely on the warrant. They're not lawyers, obviously. I think there was enough in the warrant for them to believe that it was a valid warrant. They're not going to make second guess a state judge's finding that there is sufficient probable cause in the two warrants. The good faith exception applies. The other exceptions to the good faith exception do not. In the absence of evidence that Officer Lopez was intentionally dishonest rather than negligent or simply inarticulate, application of the extreme sanction of suppression is inappropriate. The credibility, again, of Officer Lopez is a matter that is generally reserved for the district court. He found that Officer, Judge Ishii found that Officer Lopez was not lying, was credible. Did not make any deliberate representations. The government believes that the only deliberate misrepresentation in this case was the defendant's presentation of a personal use defense knowing full well that the 908 marijuana plants in this case and the 8.8 pounds of processed marijuana that were seized from most residents were intended for distribution. As we've indicated in our brief, when this case was at the state level before it was adopted for federal prosecution, the defendant and his lawyer submitted, and we submitted to this court, a list of all the people to whom he was distributing for medicinal marijuana purposes. There was also lots of evidence found within the residents that we submitted, obviously, at trial indicating that the marijuana was not for personal use, and this included, besides packaging material and triple or digital scales and that sort of thing, there were the labels that were used on little bottles for distribution of marijuana that stated grown by D.C. himself, Dustin Costa himself. That we would submit is the only deliberate misrepresentation. We would ask that the court affirm the judgment and conviction. If there are further questions with respect to any of the issues, I'd be glad to assist in answering those questions. Thank you. And we both understand there are a lot of issues in the case, and you briefed those extensively. We've read the brief, so the fact that you didn't argue them today is understandable. We wanted to appropriately hit the high points of the case. Thank you both for your arguments.
judges: Farris, Beezer, Thomas